Terhune *vs.* Dever.

JOHN TERHUNE, plaintiff in error, *vs.* JAMES T. DEVER, defendant in error.

1. Misrepresentation of a material fact made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud ; and the injured party may be relieved from the consequences of such misrepresentation.

2. No particular form of words is necessary to constitute a warranty.

3. To make an affirmation at the time of sale a warranty, it must appear to have been so intended, and not to have been a mere expression of opinion. An affirmation of the soundness of a horse made *bona fide* at the time of sale, does not necessarily amount to a warranty ; whether the words used amount to a warranty or not, is a question for the jury, under the rules of law applicable to the case.

4. Where a party warrants the soundness of a horse, he is liable on his warranty, if the horse be unsound, whether at the time the warranty was made he knew of the unsoundness or not.

5. Although the charge of the Court may not be technically accurate, yet if in effect he has submitted to the jury the legal rules which should control their finding, and it appears from the whole case that justice has been done, a new trial should not be granted.

Complaint on Note. Tried before Judge UNDERWOOD. Polk Superior Court. July Term, 1867.

Dever was sued by John Terhune upon a promissory note for $150.00, made by him on the 19th of November, 1856, payable to Anna L. Terhune or bearer.

The defence was that the consideration of the note was a brood mare, bought as such by Dever from Dr. A. A. Terhune, as agent for the payee, and warranted to be sound, when, in fact, she was unsound and worthless.

The plaintiff read the note to the jury and closed.

The defendant testified in his own behalf that he went with Dr. A. A. Terhune, who acted as agent of payee, to the stable, saw the mare, but made no examination of her there. The agent told him the mare was sound, and, relying upon this statement, he bought her, without taking her out of the stable; he does not believe the agent made any willful misrepresentation, he is a reliable and truthful man. He bought her for a brood mare, and this was known to the agent; he told the agent if she were not a good brood mare, he did not wish to buy her. The next day defendant sent for the mare; when she came she was lame, and so continued until she died from such lameness. He told the agent of this lameness, but the agent said he thought she would soon recover, as she was not seriously lame; he told the agent he did not wish to keep her if she were unsound, and the agent said "all right," but defendant did not offer to return her. Her left fore-foot was affected; she was useless and expensive to defendant, and died three or four months after the purchase. The note was not given till several days after the purchase.

CHARLES GARNER testified: that the mare was lame when she was brought to defendant, had a slight crack in the upper part of the left fore-hoof, and that foot was somewhat swollen, but it was not observable without close inspection. Witness observed it at the time and said she was unsound. In a few days thereafter he rode her to Rome and back, and she was so lame that she got along with great difficulty. He, at the instance of defendant, attended to her; she died in three or four months from that disease which he called ring-bone. She was not only worthless but expensive to defendant.

Plaintiff, for himself, in rebuttal, was examined by interrogatories. He said the mare, the consideration of the note, was at the time of the sale reasonably worth $125.00; she was the property of Mrs. Anna L. Terhune, and her son, Dr. A. A. Terhune, sold her for his mother, to defendant. The witness did not hear the trade made, was not present, but believed the mare was perfectly sound. The defendant promised continuously from the date of the note till the suit was brought (in the beginning of 1858), to pay the note when

42

his cotton should be ready for market, and nothing was said to plaintiff about this unsoundness till suit brought.

The mare was grey, fifteen or sixteen hands high, strong, well-built, and nearly as large as any mare he ever saw; he bought her for his mother, as being ten years old, (though he thought her older,) kept her but two or three months, and saw no evidences of unsoundness in her. He was not the owner of the note; he had sued on it for his mother's benefit.

In rebuttal, defendant testified that he did not know plaintiff, nor did he know there was such a man, though he knew the family, and was occasionally at Mrs. Anna L. Terhune's house.

The evidence and argument concluded, plaintiff's attorneys requested the Court to charge, that no declarations by the agent Terhune that the mare was sound, would amount to a warranty of soundness, unless said Terhune knew the mare was unsound; also, that the implied warranty of the seller that the article sold is merchantable and reasonably suited to the use intended, (and in this case that the mare was reasonably suited for a brood mare), was not broken by lameness or general unsoundness, but is broken only by her not possessing the peculiar qualities of a brood mare, as that she is a breeder, has no habits inconsistent with her raising colts, etc.

The Court charged the jury that the note made a *prima facie* case for plaintiff, that if, at the time of the sale of said mare, Dr. Terhune, as the agent of Mrs. Anna L. Terhune, repeatedly stated to defendant that the mare was sound, and defendant relied upon such statements and made no special examination of the mare, that amounted to a warranty that she was sound, whether Dr. Terhune knew of any unsoundness or not, and that if she was not then sound, it was a breach of said warranty; and if said unsoundness rendered the mare of no value, plaintiff has no right to recover. And further, that the seller of an article always impliedly warrants that it is merchantable and reasonably suited to the use intended, and if the jury believe from the evidence that Terhune sold and Dever purchased the mare as a brood mare, and at the time of said sale said mare was lame or otherwise

unsound in such a way that she shortly afterwards died and was not fitted for a brood mare, such unsoundness was a breach of said implied warranty of her being reasonably suited for the use intended.

The Court refused to charge as requested.

The verdict was for the defendant.

A new trial was moved for on the grounds that the Court erred in his said charge as to warranty, both as to express and implied warranty; that he erred in refusing to charge as requested, and because the verdict was contrary to law, to the evidence, etc.

The refusal of the new trial, upon the said grounds, is assigned for error.

E. N. BROYLES, for plaintiff in error.

CHISHOLM, WADDELL, and THOMPSON, for defendants in error.

WALKER, J.

1. Ought the Court to have granted a new trial in this case? If the testimony be credible, it is pretty clear that the purchaser received no valuable consideration for the note. The mare purchased was not only worthless, but was an expense. The agent of the seller said she was sound, and defendant acted upon this representation and made the trade. Ought the plaintiff to receive pay for an article represented to be sound, and which was then unsound and worthless? The Revised Code, Sec. 3117, says: "Misrepresentation of a material fact, made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud." Fraud may exist from misrepresentation by either party, made with design to deceive, or which does actually deceive the other party; and in the latter case such misrepresentation voids the sale, though the party making it was not aware that his statement was false. Rev. Code, Sec. 2592.

2. No particular form of words is necessary to constitute a warranty. Ch. on Con., 453; 1 Par. on Con., 463; Sto. on Sales, Sec. 357. Every affirmation at the time of sale of personal chattels is a warranty, provided it appear in evidence to have been so intended. 3 Star. Ev., 1237–'8. The tendency of all the modern cases on warranty, is to enlarge the responsibility of the seller, to construe every affirmation by him to be a warranty, and frequently to imply a warranty on his part from acts and circumstances, whenever they were relied upon by the buyer. Sto. on Sales, Sec. 359.

3. To make an affirmation at the time of sale a warranty, it must appear to have been so intended, and not to have been a mere expression of opinion. An affirmation of the soundness of a horse, made *bona fide* at the time of sale, does not necessarily amount to a warranty; whether the words used amount to a warranty or not, is a question for the jury, under the rules of law applicable to the case. If, however, the seller make any misrepresentations, which are acted on by the opposite party, though done innocently, by mistake, it constitutes legal fraud, for which the seller is responsible. While such misrepresentations may not in law constitute an express warranty, yet, inasmuch as fraud by one party, accompanied with damage to the other, in all cases gives a right of action, (Rev. Code, Sec. 2906) it may be laid down as a general rule that all representations made by the seller, and acted on by the buyer, become in effect a warranty that the property is equal to the representations. Of course there is a difference between representations of facts and commendations, which are the mere expression of opinion, and so understood by the parties; for the latter the seller is not answerable, while he is for the former, if they are acted on by the purchaser.

4. In case of a warranty of the soundness of a horse, it is immaterial whether the warrantor knew of an unsoundness or not. In case of unsoundness, the warrantor is liable in either event. The warranty is given to protect the purchaser against unsoundness, and his right of action exists by contract, irrespective of any fraud on the part of the seller.

5. We are inclined to think the Judge did not submit to the jury the rules applicable to the case with technical accuracy, yet he did so in effect; and as it appears from the whole case that justice has been done, a new trial should not be granted.

Judgment affirmed.