58063. GEORGIA SOUTHERN & FLORIDA RAILWAY
COMPANY v. ODOM et al.
58064. WORLEY v. GEORGIA SOUTHERN &
FLORIDA RAILWAY COMPANY.

CARLEY, Judge.

Mrs. Ruth Odom was a guest passenger in an automobile being operated by Wayne Worley. As the automobile was proceeding across a railroad track in Arabi, Georgia, it was struck by a freight train belonging to the Georgia Southern & Florida Railway Company (railway). Both Mrs. Odom and Mr. Worley were killed. The husband and children of Mrs. Odom filed suit against the railway. The railway answered by denying liability and filed a third-party complaint for contribution against Worley's executrix on the premise that the collision was proximately caused by Worley's gross negligence. Worley's executrix, as third-party defendant, counterclaimed against the railway. The jury returned a verdict in favor of the Odoms in the main case, against the railway on its third-party claim against Worley's executrix, and in favor of the railway on the counterclaim filed by Worley's executrix. In Case Number 58063, the railway appeals from the judgment in favor of the Odoms and the judgment in favor of the executrix of Worley on the third-party action. In Case Number 58064, Worley's executrix cross appeals from the judgment in favor of the railway on the counterclaim.

*Case Number 58063.*

1. The railway enumerates as error the admission of testimony concerning the established speed limits for trains in several towns along the same route traveled by the train causing the fatal collision. This evidence was offered and was properly admitted as explanatory or background information relevant to the issues being tried by the jury — the train's rate of speed at the time of the collision. *Kalish v. King Cabinet Co.,* 140 Ga. App. 345 (1) (232 SE2d 86) (1976); Green, Georgia Law of Evidence 155, § 61; Code Ann. § 38-201. It was alleged that the train was behind schedule at the time of the accident. It was also

alleged that the train approached the fatal intersection at an excessive rate of speed. Testimony of the lower speed limits in towns the train passed through before the accident would tend to support the testimony that the train was traveling at an excessive rate of speed at the time of the accident in order to meet its schedule. *Lovejoy v. Tidwell,* 212 Ga. 750 (95 SE2d 784) (1956). A review of the entire voluminous record shows that this evidence related to the questions being tried by the jury, was not irrelevant and was correctly allowed by the trial court.

2. Several enumerations assign error in the giving of jury charges on the doctrine of last clear chance in connection with the main action, the third-party action and the counterclaim. The doctrine of last clear chance can be invoked "only where the defendant *knows* of the plaintiff's perilous situation, and realizes, or has reason to realize, the plaintiff's helpless condition, that the defendant is charged with the duty of using with reasonable care and competence his *then* existing ability to avoid harming the plaintiff." *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665, 670 (88 SE2d 6) (1955). It is urged that there is no evidence in the instant case that at the time the train crew first became aware of the presence of the car on the tracks any action could possibly have been taken to avoid the collision. However, the testimony of the brakeman indicated that when he saw a car which successfully preceded the Worley automobile across the tracks, the train was 150 feet from the crossing and that he saw the Worley vehicle "a split second" afterwards. That the jury was authorized to conclude that the brakeman saw the Worley automobile as well as the car which negotiated the crossing without a collision is shown by the brakeman's testimony that he "thought the *cars* would stop, but *they* didn't." There was also testimony that, after the lead car passed over the tracks, the brakeman told the engineer, "Here comes another one." Thus it appears that the crew was aware of both cars and thus realized the existence of a perilous situation. Compare *Southland Butane Gas Co.,* supra; *Conner v. Mangum,* 132 Ga. App. 100 (207 SE2d 604) (1974). However, the jury was authorized to find that the train crew failed to sound either the horn or whistle. Compare *Central of Ga. R. Co. v.*

*Little,* 126 Ga. App. 502 (191 SE2d 105) (1972). It is true that the train could not have been halted totally even had the crew taken all available remedial steps. However, there was sufficient evidence in the record to show that the train was in the eighth notch (the fastest speed) and that the crew could have "notched down." Such action would have reduced the speed of the train to some extent and a jury could have found — and the verdict indicates that it did — that even such a slight reduction in speed would have been sufficient to have allowed the Worley car to pass safely over the tracks. Thus, as in *Central of Ga. R. Co. v. Sellers,* 129 Ga. App. 811, 818 (201 SE2d 485) (1973), "[u]nder the facts presented by this case, a jury question is presented as to whether the defendant's engineer had the 'last clear chance' of avoiding the collision with the [Worley] automobile. While the evidence conclusively shows that the train could not have been stopped prior to reaching the crossing by applying the emergency brakes when the [Worley] automobile first 'came into plain view' . . . it is entirely possible that the [Worley] automobile would have passed over the tracks without being struck by the train . . ." See also *Thompson v. Powell,* 60 Ga. App. 796, 805 (5 SE2d 260) (1939); and *Seaboard C. L. R. Co. v. Wallace,* 123 Ga. App. 490 (181 SE2d 542) (1971). The instructions on the last clear chance doctrine were supported by and adjusted to the evidence and were not erroneous.

3. Evidence offered by an expert on the value of the life of the deceased may take into account statistical studies and inflationary trends. Cf. *Woods v. Andersen,* 145 Ga. App. 492 (4) (243 SE2d 748) (1978). Testimony as to the value of Mrs. Odom's life was not erroneously admitted for any reasons urged.

4. Several enumerations address the trial court's refusal to give requested charges concerning Mrs. Odom's duty as guest passenger to exercise ordinary care and that there could be no recovery by her survivors if, in the exercise of such care, she could have prevented the collision. There was no testimony in the record indicating that Mrs. Odom, if she saw the approaching train at all, had an opportunity to take appropriate action to avoid injury to herself or to warn Worley, the host driver, of the

hazard. The requested charges were properly refused. *King v. Parson,* 149 Ga. App. 28, 29 (3) (253 SE2d 426) (1979).

5. The trial court refused to give a requested charge on the degree of care to be exercised by one whose view of an approaching railroad crossing is obstructed. Without quoting the request, suffice it to say that, as worded, it might have been confusing and, in addition, was sufficiently similar to the charge disapproved in *Wright v. Dilbeck,* 122 Ga. App. 214, 228 (8) (176 SE2d 715) (1970) to warrant rejection.

6. Error is argued on the refusal to give the following charge: "The precise thing which every person is bound to do before going on a railroad track is that which every prudent man would do under like circumstances; and if there is a place of safety from which a prudent man would look upon the course from which oncoming trains might come, the driver of a vehicle should look upon such course from that point and so take the necessary precautions, both for himself and his vehicle." The *giving* of such a charge has been held not to be error. *Atlantic C. L. R. Co. v. Assoc. Transp., Inc.,* 94 Ga. App. 563, 564 (95 SE2d 755) (1956). However, the refusal to give this charge is not error for the reason stated in *Northern Freight Lines v. Sou. R. Co.,* 108 Ga. App. 189, 191 (132 SE2d 541) (1963), wherein this court, in discussing the very charge in issue here, held: "Though we have not held all of the instructions upon which error is assigned to be reversible error in the present case, we do not hold that the trial court would be required to give any of them to the jury upon request . . . Language employed by an appellate court in discussing a case may be argumentative and is not necessarily proper for use by a trial judge in charging a jury." Furthermore the charge, as a whole, fully and fairly charged on the ordinary prudent person standard. There was no error.

7. Other enumerations which argue the rejection of requested charges are without merit. "It is no longer necessary to give the exact language of a request to charge when the same principles are fairly given to the jury in the general charge of the court." *Burnett v. State,* 240 Ga. 681, 687 (7) (242 SE2d 79) (1978).

8. It is urged that the charge on gross negligence was

error. The charge, which incorporated the language of Code Ann. § 105-203 and the instruction approved in *Hatcher v. Bray,* 88 Ga. App. 344 (77 SE2d 64) (1953), was not erroneous. The railway further argues, however, that the issue of Worley's gross negligence and slight care owed to Mrs. Odom as a guest passenger(*Bickford v. Nolen,* 240 Ga. 255 (240 SE2d 24) (1977)) has no bearing in the instant case since Worley's executrix is a party to the action solely as the result of being impleaded for contribution purposes and there is no action against the executrix based upon the guest passenger-host driver relationship. It is urged that, under these circumstances, it is the standard of liability applicable to the railway which controls regardless of the differing degree of care each owed to Mrs. Odom.

While we have found no cases involving the exact state of facts which are presented here, as a general proposition, a defendant cannot use contribution as a means of establishing the liability of a third party in contravention of the rules of law which would prevail if the plaintiff had himself sued that third party. For example, the mother of an injured minor cannot be impleaded by a defendant because the injured plaintiff could not sue his mother under the doctrine of "parental immunity." *Eschen v. Roney,* 127 Ga. App. 719 (194 SE2d 589) (1972). Under a like analysis, Mrs. Odom's survivors could not recover against Worley's executrix in the absence of Worley's gross negligence, *Bickford,* supra, and, therefore, the railway is not entitled to contribution in the absence of anything short of Worley's gross negligence. The railway cannot indirectly, through its third-party action for contribution, make Worley liable for the death of Mrs. Odom for any reason short of his gross negligence when the law would not allow such a result were it sought directly. *Eschen,* supra. Since Worley's executrix can be liable only for gross negligence contributing to the death of Mrs. Odom, the outcome of the railway's third-party action against the executrix for contribution must turn on whether such gross negligence existed. It, therefore, follows that instructing the jury on gross negligence was not error.

9. The railway's remaining enumerations of error have been considered and are found to be without merit.

*Case Number 58064.*

10. Objection is made by cross-appellant to a charge given in the language of Code Ann. § 68A-702, concerning the erection of stop signs at "particularly dangerous highway grade crossings or railroads" and the duty of an approaching driver to obey the stop sign. It is urged that the charges were error because there was no evidence that the fatal crossing had been designated as "particularly dangerous." It was, however, undisputed that the crossing was marked with a stop sign. These enumerations are clearly without merit. Code Ann. § 68A-201 (c).

11. Error is enumerated on the giving of a charge which was held to have been erroneously refused in *Central of Ga. R. Co. v. Little,* 126 Ga. App. 502, 505 (2) (191 SE2d 105) (1972). Therefore, arguments that the charge as given was erroneously argumentative are without merit.

12. The following charge is cited as error: "I charge you that under the evidence of this case and at the time of the accident here involved, there was no statute of Georgia or valid municipal ordinance which required the Defendant Railroad to have a watchman or mechanical signaling device at the crossing where the accident took place." Cross-appellant contends this charge was argumentative but does not contest that it accurately states what the law did *not* require. "The charge here was not argumentative, nor was it error because it undertook to charge the jury what the law does not require. It was merely an undertaking on the part of the judge to clarify the requirements of the law in the minds of the jury." *Hopper v. McCord,* 115 Ga. App. 10, 11 (153 SE2d 646) (1967).

13. Refusal to give the following charge is enumerated as error: "I charge you further that the mere violation of a state statute by the deceased, Wayne Worley, does not constitute gross negligence in and of itself." Even assuming without deciding that this is a correct statement of the law (*Tatum v. Pruitt,* 107 Ga. App. 172 (129 SE2d 388) (1962)), the issue of the gross negligence of Worley was an issue in the case only insofar as it related to the railway's third-party action against his personal representative for contribution, as discussed in Division 8 of this opinion, supra. The jury was so instructed. The

jury's verdict vindicated cross-appellant on this issue at trial and we are affirming the judgment entered on that verdict. The court properly charged on the degree of care and standards applicable to the counterclaim made by Worley's executrix against the railway. Under these circumstances we fail to see how the rejection of the requested charge — which related only to the third-party action and had no bearing on the issues involved in the counterclaim — was harmful to cross-appellant who appeals from the judgment against her on the counterclaim. Cross-appellant has not demonstrated how such failure to charge was harmful as to the counterclaim, the adverse judgment thereon being the subject of the cross-appeal. There was no reversible error.

*Judgments affirmed. Quillian, P. J., McMurray, P. J., Smith, Shulman, Banke, Birdsong and Underwood, JJ., concur. Deen, C. J., dissents.*

ARGUED JULY 2, 1979 — DECIDED NOVEMBER 13, 1979 — REHEARING DENIED DECEMBER 4, 1979 IN CASE NO. 58063 —

*F. Kennedy Hall, G. Mallon Faircloth,* for appellant (Case No. 58063).

*E. Bruce Benton, Hilliard Pace Burt, George M. Mixon, Wallace Miller, III,* for appellees.

*Hilliard Pace Burt, George M. Mixon,* for appellant (Case No. 58064).

*F. Kennedy Hall, G. Mallon Faircloth, E. Bruce Benton,* for appellee.

DEEN, Chief Judge, dissenting.

While it has been held that the speed of vehicles on occasions other than the one in question is a matter the relevance of which is largely within the discretion of the trial judge (*Lovejoy v. Tidwell,* 212 Ga. 750, 753 (95 SE2d 784) (1956)), proof here that a number of towns along the same route as that where the accident occurred had train speed limits of 20 or 30 miles per hour whereas the intersection in question, also within a municipality, had a limit of 55 miles per hour, without proof of identity of

topography, traffic, and so forth, should have been excluded. That these towns had low limits which might tend to slow the train below schedule has no value in establishing that it was exceeding its speed limit at the time of the collision. "It is a general rule that in a suit for negligence, evidence of similar acts or omissions on other and different occasions is not admissible." *Williams v. Slusser,* 104 Ga. App. 412 (5) (121 SE2d 796), and see *Holloman v. Hopson,* 45 Ga. App. 762 (8) (166 SE 45) (1932). Proof that the speed limit was different at other localities does not establish that it was disregarded at those localities, and even evidence of that fact would not establish that it was disregarded at the time and place in question.

The danger of this evidence is its tendency to persuade the jury that if the train was required to travel at a slow rate through other municipalities the defendant would be guilty of negligence as a matter of fact (common law negligence) at the intersection where the collision occurred, which is not true. It was traveling at a slower rate in other municipalities because of local ordinances, and an infraction of those ordinances would not be common law negligence but negligence per se. Thus, analogizing these situations by the admission of testimony as to other locations is like mixing apples and oranges, and in my opinion would have the effect only of confusing the jury on the question at issue. That question is whether (a) the train was going over 55 miles per hour, or (b) under the circumstances prevailing at the time and place it was traveling at a speed which constituted negligence as a matter of fact.

I believe the admission of this evidence to be reversible error.